<u>FOR PUBLICATION</u>

**Order Filed on December 8, 2014
by Clerk
U.S. Bankruptcy Court
District of New Jersey**

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br><br>In Re:<br><br>Roberto Osorio and Julia M. Osorio,<br><br>Debtors. | Case No.: 13-36671-ABA<br>Chapter:  13<br>Judge:    Andrew B. Altenburg, Jr. |
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br><br>In Re:<br><br>Emily T. Beck,<br><br>Debtor. | Case No.:  14-26372-ABA<br>Chapter:  13<br>Judge:    Andrew B. Altenburg, Jr. |

**MEMORANDUM DECISION**

**DATED: December 8, 2014**

Honorable Andrew B. Altenburg, Jr.
United States Bankruptcy Court

## I.     INTRODUCTION

These matters are comprised of two separate chapter 13 bankruptcy cases in which the debtors Roberto and Julia Osorio and Emily Beck (collectively, the "Debtors" [1]) filed chapter 13 plans which propose to separately classify municipal court fines and pay those fines in full but offer a 0% distribution to the remaining unsecured creditors.   Isabel C. Balboa, the Chapter 13 Standing Trustee (the "Trustee") filed objections to confirmation of the Debtors' plans arguing that such treatment is an unfair discrimination between the classes of unsecured claims.  The parties filed written submissions and the court conducted oral argument on the matters after which it took the matters under advisement.

Section 1322(b)(1) of the Bankruptcy Code permits a chapter 13 debtor to designate a separate class of unsecured claims so long as that class does not unfairly discriminate against any other class of unsecured claims. The question presented in these cases is whether a below median income debtor in a chapter 13 case unfairly discriminates in proposing to separately classify and make full payment from the debtor's projected monthly disposable income on unsecured dischargeable municipal court fines, while at the same time, offering no payments to the remaining general unsecured claims. The court concludes that such treatment is unfair discrimination during the applicable commitment period—here 36 months—and violates Section 1325(b)(1)(B). By contrast, the court concludes that after the applicable commitment period, payments in full to one class of creditors with no payments to other general unsecured claims would not unfairly discriminate.

## II.     JURISDICTION AND VENUE

The court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended October 17, 2013, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(L). Venue is proper in this Court pursuant to 28 U.S.C. § 1408. The statutory predicates for the relief sought herein are 11 U.S.C. §§ 1322(b)(1) and 1325(b)(1)(B). Pursuant to Fed.R.Bankr.P. 7052, the court issues the following findings of fact and conclusions of law.

## III.     FINDINGS OF FACT

Roberto and Julia Osorio filed a chapter 13 bankruptcy case on December 6, 2013. They disclosed no secured or priority unsecured debts and $129,993.84 in unsecured debts, all jointly owed. The Osorios propose in their chapter 13 plan to pay $221 per month for 60 months, for a total of $13,260. The plan will pay their attorney fees of $2,781 (plus any future fees), the

---

[1]   All Debtors are represented by the same attorney Eric J. Clayman, Esquire.

Trustee's commission, and a total of $8,109 to eight municipal courts for court fines (the "Osorio Fines"). The Osorios offer no distribution to the remaining unsecured creditors under the plan.

Upon request of the court, the Osorios' attorney supplemented the record concerning the Osorio Fines:

| Town | Amount | Infraction |
|------|--------|------------|
| Northfield | $248.59 | driving on a suspended license |
| Mt. Laurel | $692.94 | driving on a suspended license |
| Winslow | $420.00 | loading vehicle wrong way |
| Winslow | $ 65.00 | driving on a suspended license |
| Waterford | $1,209.00 | exterior property condition |
| Pennsauken | unknown | unknown |
| Camden | unknown | unknown |

There is also a criminal complaint for restitution with the Township of Berlin.

Only one of the municipalities the plan proposes to pay, Winslow Township, filed a proof of claim alleging a secured claim of $420. Other general unsecured creditors filed a total of $36,304.98 in claims.

Emily Beck filed chapter 13 bankruptcy case on August 8, 2014. She disclosed a secured debt on a 2006 Volkswagon valued at $1,500, no priority unsecured debts, and $50,338.02 in unsecured claims. In her plan, she proposes to pay $164 per month for 40 months, for a total of $6,560. She will pay her attorney fees of $3,070, the Trustee's commission, $1,595 to the secured lender on her vehicle, and a total of $1,345 to two municipal courts for court fines (the "Beck Fines" collectively with the Osorio Fines, the "Municipal Court Fines"). Beck offers no distribution to the remaining unsecured creditors under the plan.

Upon request of the court, Ms. Beck's attorney supplemented the record concerning the Beck Fines:

| Town | Amount | Infraction |
|------|--------|------------|
| Washington | $260 | failure to exhibit documents and failure to provide child safety seat |
| Gloucester | $1,000 | speeding ticket |

> Failure to possess insurance   (hearing pending)
> Failure to possess insurance (2d ticket) (hearing pending)

Proofs of claim filed by these municipalities in the Beck bankruptcy allege $260 owed to Washington Township but only $222 owed to Gloucester Township. Other creditors filing claims total $3,754 in general unsecured claims.

The Trustee objected to the plans in both cases, arguing that the Municipal Court Fines are dischargeable and that by paying the Municipal Court Fines in full while providing nothing to the remaining unsecured creditors, the Debtors are unfairly discriminating against the remaining unsecured creditors under 11 U.S.C. § 1322(b)(1). The Debtors argue that because there is a possibility of incarceration for not paying the Municipal Court Fines, there is a basis for the separate treatment and that they are thus not unfairly discriminating under the plans.

On the return date of the hearing on the Trustee's objection to their plans, the Debtors conceded that the Municipal Court Fines were debts "for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit," and "not compensation for actual pecuniary loss" which fall under 11 U.S.C. § 523(a)(7), and that the Municipal Court Fines were potentially dischargeable in a chapter 13 case. The Debtors also acknowledged, and the Trustee agreed, that the Debtors are below median income debtors as calculated pursuant to Part I of Form B22C. Finally, only the Debtors' projected monthly disposable income, as determined by 11 U.S.C. § 1325(b)(2) and (3), is being used to fund their plans. The applicable commitment period is three years.

Also at the hearing, the Debtors' counsel stated to the court that when he has a chapter 13 client with a license suspension, counsel sends notice of the bankruptcy filing to the municipal court clerk which then might restore the license. Once counsel has a confirmed plan that pays a municipality in full, many municipalities, although not all, will reinstate the license. Counsel stated that for those municipalities which will reinstate a license, the municipality usually requires counsel to present it with a confirmed plan demonstrating that the claim will be paid in full.

## IV.   DISCUSSION

### A.  Discharge in Chapter 13

Before addressing a debtor's ability to separately classify the Municipal Court Fines under Section 1322(b)(1), a review of Sections 523 and 1328 of the Bankruptcy Code is helpful. Section 523 provides for certain exceptions to discharge in bankruptcy cases. Relevant to this discussion is Section 523(a)(7) which provides:

> (a)    A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of
>         this title does not discharge an individual debtor from any debt—. . .

(7)    to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty—

        (A) relating to a tax of a kind not specified in paragraph (1) of this subsection; or

        (B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition; . . .

11 U.S.C.A. § 523(a)(7) (2010).

Section 1328 of the Bankruptcy Code provides discusses the dischargeability of certain debts in chapter 13 cases. That section provides, in relevant part:

(a)    Subject to subsection (d), as soon as practicable after completion by the debtor of all payments under the plan . . . the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt—

. . .

(2)    of the kind specified in section 507(a)(8)(C) or in paragraph (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) of section 523(a)[.]

11 U.S.C. §1328(a)(2). Specifically excluded from this section is reference to section 523(a)(7).[2] Because Congress chose not to include Section 523(a)(7) in this section, debts for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit are dischargeable in chapter 13 cases provided that the requirements of Section 1328(a) are met. *See In re Ryan*, 389 B.R. 710, 717 (B.A.P. 9th Cir. 2008) ("[I]f Congress wanted to create an exception to discharge in chapter 13 cases to cover all penal sanctions, it had language ready at hand to achieve that result in the language of § 523(a)(7). . . ."); *In re Cespedes*, 393 B.R. 403, 409 (Bankr. E.D.N.C. 2008); and *In re Alicea*, 199 B.R. 862, 864 (Bankr. D.N.J. 1996). In the present case, it is undisputed that the Municipal Court Fines fall within the definition of Section 523(a)(7) of the Bankruptcy Code. As a result, assuming the Debtors' chapter 13 cases are successful, the Municipal Court Fines are dischargeable. For that reason, the Municipal Court Fines are afforded no more standing than the remaining general unsecured claims because in a chapter 13 case they are on the same level of priority as other general unsecured claims.

### B. Ability to Discriminate Under A Chapter 13 Plan

---

[2] Similarly, Section 523(a) specifically excludes Section 1328(a) from its language.

Despite the fact that the Municipal Court Fines are afforded no more standing than the remaining general unsecured claims, Section 1322(b)(1) of the Bankruptcy Code permits the Debtors to discriminate between their classes of unsecured creditors. Specifically, Section 1322(b)(1) provides, in relevant part:

> Subject to subsections (a) and (c) of this section, the plan may—(1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not ***discriminate unfairly*** against any class so designated[.]

11 U.S.C. § 1322(b)(1) (emphasis added). Hence, the Bankruptcy Code permits the Debtors to designate the Municipal Court Fines as a separate class of unsecured claims from the remaining unsecured claims so long as the classification does not unfairly discriminate. "'As the statute makes clear, discriminatory treatment of unsecured creditors through classification is not prohibited—*unfair* discrimination is." *In re Stella*, No. 05-05422-TLM, 2006 WL 2433443, at *2 (Bankr. D. Idaho June 28, 2006) (emphasis in the original) (citing *In re Sperna,* 173 B.R. 654, 658 (9th Cir. BAP 1994)).

Unfortunately, the Bankruptcy Code does not define what it means to "discriminate unfairly." When deciding the issue, the court should always balance the interests of the debtor and the creditors. "[D]ifferent treatment is permissible if and only if the debtor is able to prove a reasonable basis for the degree of discrimination contemplated by the Plan." *In re Alicea*, 199 B.R. at 866 (Bankr. D.N.J. 1996). Several courts have created different factors to consider in determining whether proposed discrimination is unfair. For example, the court in *In re Bird*, No. 9401012, 1994 WL 738644, at *4 (Bankr. D. Idaho Dec. 23, 1994), outlined eight non-exclusive factors: [3]

> (1) whether the discrimination substantially enhances or is necessary to the feasibility of the plan; (2) whether the discrimination reflects chapter 7 liquidation priorities; (3) whether the discrimination is otherwise contemplated by the Code; (4) whether the creditor discriminated against will receive more under the plan than it would in a hypothetical chapter 7 liquidation; (5) if the creditors as a whole will receive more under the plan than in a hypothetical chapter 7 liquidation, will the discrimination encourage the use of chapter 13; (6) will the discrimination reduce the chances that the debtor will be forced to file bankruptcy in the future; (7) does the discrimination enhance an interest of the debtor which is otherwise protected or furthered by the Code; and (8) the extent of the discrimination.

*In re Bird,* 1994 WL 738644, at *4. "This test has also been criticized." *In re Cooper*, No. 08-20473-RLJ-13, 2009 WL 1110648, at *3 (Bankr. N.D. Tex. Apr. 24, 2009) (citing *Stella,* 2006

---

[3] *Bird* itself notes that "none of the above factors should be considered definitive. Nor should the number of factors indicating fairness or unfairness be determinative of the issue. Rather, the factors should be used on qualitative case-by-case basis." *In re Bird*, No. 9401012, 1994 WL 738644, at *4 (Bankr. D. Idaho Dec. 23, 1994).

WL 2433443, at *4).  Other courts have noted that Congress anticipated some discrimination in providing for separate classes in Section 1322(b)(1).  For example, the court in *In re Labib-Kiyarash*, 271 B.R. 189 (B.A.P. 9th Cir. 2001), looked to the test set forth in *Amfac Distribution Corp. v. Wolff (In re Wolff)*, 22 B.R. 510 (B.A.P. 9th Cir. 1982), to determine whether proposed discrimination was unfair.  That test considers: (1) does the discrimination have a reasonable basis; (2) can the debtor carry out a plan without the discrimination; (3) is the discrimination proposed in good faith; and (4) is the degree of discrimination directly related to the basis for the discrimination.  *Id*. at 192.  Incontrovertibly, all courts require a reasonable basis for discrimination.  This court chooses to apply different factors from the several non-exclusive lists courts have developed in making its determination on whether there is a reasonable basis for the discrimination under the Debtors' plans.

### i.        Threat of Incarceration

The Debtors argue that if the Municipal Court Fines are not separately classified, the Debtors will be subject to incarceration and presumably, their plans will fail.[4] On that basis they argue that the proposed discrimination is reasonable and would substantially enhance or be considered necessary to the feasibility of the Debtors' plans. However, a review of the applicable New Jersey statutes relating to the Municipal Court Fines reveals that while incarceration is a possibility - it is not mandatory. When a defendant sentenced to pay an assessment, penalty, fine, or other court-imposed financial obligation defaults in payment, then on motion, a "court shall recall him or issue a summons or warrant for his arrest for his appearance." N.J.S.A. § 2C:46-2(a) (2014). If the person has defaulted without good cause, then the court shall order the suspension of the person's driver's license and any other actions as may be authorized by law. N.J.S.A. § 2C:46-2(a)(1). Only if the default was willful may the court additionally may impose a term of imprisonment, labor assistance, or community service. N.J.S.A. § 2C:46-2(a)(2). If incarceration is not ordered, the court may modify or establish a reasonable schedule for payment; revoke or suspend the fine on a finding that circumstances have changed or that it would be unjust to require payment; or order credit against the obligation for days served in jail. N.J.S.A. § 2C:46-2(a)(3)(a)-(c).

New Jersey also permits a court to order a person who is sentenced to pay a fine and who defaults in payment, to perform community service in lieu of incarceration; the court can order other modifications of the sentence with the defaulting person's consent. N.J.S.A. 2B:12-23. In addition, on a finding that a defendant does not have the ability to pay, the court may reduce or suspend the penalty or modify the installment plan; order that credit be given for any days of

---

[4] At the hearing on the Trustee's objection, counsel to the Debtors stated that the Debtors could also lose their drivers licenses. This argument is unpersuasive because a municipality cannot revoke a license due to a bankruptcy filing. *In re Wright*, No. 09-21247 (RTL), 2010 WL 846920, at *4 (D.N.J. Mar. 9, 2010) (stating that 11 U.S.C. § 525 "prohibits Motor Vehicle Services from refusing to reinstate a chapter 13 debtor's driver's license after notice of the bankruptcy"); s*ee also In re Brown*, 244 B.R. 62, 66-67, 70 (Bankr. D.N.J. 2000); *In re Adams*, 106 B.R. 811, 828 (Bankr. D.N.J. 1989); *Smith v. Pa. Dep't of Transp.,* 66 B.R. 244 (E.D. Pa. 1986).

confinement; revoke any unpaid portion of the penalty on a finding that circumstances have changed or it would be unjust to require payment; order community service in lieu of payment; or impose any other alternative permitted by law. N.J.S.A. § 2B:12-23.1(a).[5] In the unlikely event imprisonment is warranted, a court may also order that a sentence of imprisonment be served periodically on certain days rather than consecutively. N.J.S.A. 2B:12-22.

Likewise:

Any defendant convicted of a traffic offense pursuant to Title 39 of the Revised Statutes or a parking offense, shall, upon a satisfactory showing of a condition of indigency or participation in a government-based income maintenance program, be permitted by the court to pay the fine in installments. The court . . . may waive an unpaid portion, up to $200, of any court-imposed time-payment order . . . for a defendant who is indigent or is participating in a government-based income maintenance program and who has demonstrated an inability to comply with the time-payment order, and in lieu of the remaining unpaid amount, require the defendant to perform community service for a period of time to be determined by the court. . . . [I]ndigency is an income up to 250 percent of the poverty level, as defined in section 4 of P.L. 2005, c. 156 (C.30:4J-11).

N.J.S.A. § 39:4-203.1.

It is clear that before incarceration, due process affords an offender the opportunity to be heard. This court is convinced that after a default in payment the state courts have several statutory alternatives available before they look to incarceration. Even more so, the Supreme Court's holding in *Bearden v. Georgia*, 461 U.S. 660 (1983), compels courts to determine whether a default is willful or is caused by a defendant's inability to pay before a court incarcerates a defendant. If a default is a result of a defendant's inability to pay, the Supreme Court instructs courts to consider alternative methods of punishing the defendant. 461 U.S. at 673. Since the general purpose of a bankruptcy case is to grant relief to those who cannot pay their debts as they become due, s*ee In re Modiri,* 474 B.R. 511, 514 (Bankr. E.D. Mich. 2012); *In re Balaja*, 190 B.R. 335, 340 (Bankr. N.D. Ill. 1996); *Matter of Clifton*, 35 B.R. 785, 787 (Bankr. D.N.J. 1983), it would not be unreasonable to conclude that bankrupt debtors have an inability to pay their fines, and therefore alternative remedies would be explored.

In addition, several other courts have concluded that the threat of incarceration alone is not sufficient for a separate classification in a chapter 13 plan. In coming to this conclusion:

[S]everal . . . courts have analyzed § 1322(b)(1) classifications where the debtor faced possible incarceration. An off cited [sic] case is *In re Limbaugh, . . .* in which the Oregon bankruptcy court articulated a policy argument against discrimination in these cases:

---

[5] This statute applies to criminal and non-criminal i.e., disorderly, petty disorderly and traffic offenses.

> By allowing debtors to separately classify the restitution debt this court
> would reduce the impact of the criminal sanctions imposed by the state
> court by requiring debtors' innocent unsecured creditors to subsidize Ms.
> Limbaugh's criminal sanctions. Two purposes of criminal sanctions are to
> deter and punish the wrongdoer. Both of these purposes are undermined
> when innocent creditors are required to help pay for a debtor's criminal
> sanctions.

*In re Stella*, 05-05422-TLM, 2006 WL 2433443 (Bankr. D. Idaho June 28, 2006) (footnotes omitted) (citing *In re Limbaugh*, 194 B.R. 488, 493 (Bankr. D. Or. 1996)). In *Stella*, the debtor argued that the potential to be incarcerated required the special treatment of two creditors because, if incarcerated, the debtor could not carry out his plan. *In re Stella*, 2006 WL 2433443, at * 2. The court disagreed, as the debtor did not establish that he faced a substantial risk of criminal prosecution for issuing nonsufficient funds checks.

All in all, the possibility of incarceration for failing to pay Municipal Court Fines appears remote.[6] In the end, the proposed discrimination based upon the Debtors' possible incarceration alone is not a reasonable basis to support their arguments that the discrimination substantially enhances or is necessary to the feasibility of their plans.

Other factors this court considers include that the discrimination proposed by the Debtors does not reflect the chapter 7 liquidation priorities. As set forth above, the Municipal Court Fines have no greater standing than any other general unsecured claim. They are not priority claims which should recover any more than the remaining general unsecured claims. Although they would be nondischargeable in a chapter 7 case, the Bankruptcy Code does not contemplate that nondischargeable general unsecured claims be afforded any different treatment than dischargeable general unsecured claims. *See In re Bentley*, 266 B.R. 229, 235 (B.A.P. 1st Cir. 2001) (reasoning that nothing in the Bankruptcy Code mandates that nondischargeable debts be paid in full, and that nondischargeability is not the same thing as priority). Additionally, the fact that the creditors discriminated against would receive nothing in chapter 7 does not mean that the discrimination in chapter 13 is fair. *See In re Alicea*, 199 B.R. at 866 (Bankr. D.N.J. 1996). Finally, while it certainly can be argued that the discrimination will promote the "fresh start" contemplated by the Bankruptcy Code, *see Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934), the presence of this element alone cannot be the reasonable basis to allow the discrimination. *See Bentley*, 266 B.R. at 242. Based upon the foregoing, the court finds that the Debtors' plans, as

---

[6] All the same, the court notes in the unfortunate event that a state court would take the extraordinary step to substitute incarceration or community service or other alternative in lieu of payment of its claim, this court could not prevent it from doing so. This court cannot compel a state court to accept payment in lieu of incarceration. *See In re Cuevas,* 205 B.R. 457 (Bankr. D.N.J. 1997) and *In re Perrin*, 233 B.R. 71 (Bankr. D.N.J. 1999). In such an event, separate classification in a plan would serve no purpose because the state would be seeking an alternative to payment, and consequently there would be no basis for the separate classification.

proposed, discriminate unfairly against the remaining general unsecured creditors and violate 11 U.S.C. §1322(b)(1).

### ii.    Extent of Discrimination

Even if the Debtors could convince the court that there may be a reasonable basis for discrimination, the extent of the discrimination proposed by the Debtors is entirely unacceptable and unfair. They propose to pay the Municipal Court Fines in full and absolutely <u>nothing</u> to the remaining general unsecured creditors. Such a disparity, on its face, constitutes unfair discrimination. *See, e.g., Boscaccy*, 442 B.R. at 512 (where in one of three cases decided the court concluded that where unsecured creditors would receive no dividend versus an 80 percent dividend without the classification, the plan unfairly discriminated); *In re Precise*, 501 B.R. 67 (Bankr. E.D. Pa. 2013) (denying confirmation of plan that sought to pay student loan creditor a divided of 86 percent while all other general unsecured creditors would receive no more than 8.4 percent, versus 45 percent if there were no discrimination); *In re Kubeczko*, No. 12–13766 HRT, 2012 WL 2685115 (Bankr. D. Colo. July 6, 2012) (denying confirmation where student loan creditor would receive a dividend of 46.86 percent while all other general unsecured creditors would receive no more than 0.27 percent, versus 8.06 percent if there were no discrimination, i.e. general unsecured creditors were to suffer a 97 percent reduction in payments).  Paying one class of similar claims 100% while paying 0% to the other class is patently unfair.

What is more, because of the nature of the Municipal Court Fines, the proposed plans would in effect force the other general unsecured creditors to pay the price for the Debtors' alleged wrongdoing. *See In re Cooper*, 2009 WL 1110648, at *8; *In re Crawford*, 324 F.3d 539, 543 (7th Cir. 2003) (the effect would be "to make the debtor's other unsecured creditors pay his fine or restitution"); *In re Williams*, 231 B.R. 280, 282 (Bankr. S.D. Ohio 1999) (stating that "[t]wo purposes of criminal sanctions are to deter and to punish the wrongdoer" and that "[b]oth of these purposes are undermined when innocent creditors are required to help pay for a debtor's criminal sanctions"); *In re Ponce,* 218 B.R. 571, 575 (Bankr. E.D. Wash. 1998) ("The whole point of punishment would be avoided if the debtor could transfer the cost of this punishment to his other unsecured creditors."). The Debtors' proposed treatment of the Municipal Court Fines, as well as, the Osorios' proposal to separately classify and pay the criminal complaint for restitution, are simply unacceptable because they are requiring the remaining innocent unsecured creditors to pay for their wrongdoing. This is neither equitable nor fair.

### C.  Interplay Between Section 1322(b)(1) and Section 1325(b)(1)(B)

Another reason to reject the Debtors' proposed plans is the interplay between Section 1322(b)(1) and Section 1325(b)(1)(B). In light of the Trustee's objection to the Debtors' plans, the court cannot confirm the plans unless, *inter alia*:

> the plan provides that *all of the debtor's projected disposable income to be received in the applicable commitment period* beginning on the date that

> the first payment is due under the plan will be applied *to make payments to*
> **_unsecured creditors_** *under the plan.*

11 U.S.C §1325(b)(1)(B) (emphasis added). This language is clear. If Congress intended Section 1322(b)(1) to allow discrimination in the application of Section 1325(b)(1)(B), it would have made an exception. *See In re Mortimore*, No. 11-955 (RMB), 2011 WL 6717680, at \*5 (D.N.J. Dec. 21, 2011). The presumption is that "a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) (internal citations omitted); *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 358 (3d Cir. 2011). This means that "when the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms." *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) and *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989)). Section 1325(b)(1)(B) is clear and unambiguous. It requires payments from a debtor's projected disposable income during the applicable commitment period to unsecured creditors.[7] It certainly does not allow payments to one class of general unsecured claims while ignoring payments to another class of general unsecured claims during the applicable commitment period. This could not have been the intent of Congress or the purpose of Section 1322(b)(1).

Because these Debtors are below median income debtors, the applicable commitment period is 36 months. 11 U.S.C. § 1322(d)(2). The Debtors propose to pay nothing to the remaining general unsecured claims while attempting to pay the Municipal Court Fines. Here, the Debtors' plans propose to start to pay the Municipal Court Fines during the applicable commitment period without paying anything to the remaining general unsecured claims during that same period. This violates Section 1325(b)(1)(B) and as such, confirmation must be denied.

### D.  Ability to Discriminate

For all that, all is not lost for the Debtors. Section 1325(b)(1)(B) only requires payment of the Debtors' projected disposable income *during the applicable commitment period*. If the Debtors were to propose plans which provided for *pro rata* payments of the Municipal Court Fines and the remaining general unsecured claims during the applicable commitment and then, after expiration of the applicable commitment period, they were to propose to pay the Municipal Court Fines in full,[8] Section 1325(b)(1)(B) would not be violated. More importantly, such discrimination would not offend the concept of fairness under Section 1322(b)(1).

---

[7] In doing so, a debtor must comply with 11 U.S.C. § 1322(a)(2) and § 1328(b), which require payment in order of priority.

[8] For "cause" under 11 U.S.C. § 1322(d)(2).

Discrimination is fair only where there is a "correlative benefit to the other unsecured creditors." *Bentley*, 266 B.R. at 243. By paying the general unsecured creditors *pro rata* with the Municipal Court Fines during the applicable commitment period and thereafter paying what remains of the Municipal Court Fines, the remaining unsecured creditors would be receiving the same correlative benefit during the applicable commitment period. When the proposed discrimination offers each class the same benefits and burdens it would receive at the baseline, then the discrimination is fair. *Id.* at 240. Since the general unsecured creditors are getting paid the same baseline amount during the applicable commitment period,[9] discrimination after the expiration of the applicable commitment period is permissible and the plan would be confirmable under Section 1325(b)(1)(B).

Assuming a debtor's plan complies with Section 1325(b)(1)(B) and seeks a longer time period under Section 1322(d)(2) to allow the debtor to discriminate, the debtor's burden of proving that the discrimination is fair is reduced. Because the debtor would no longer be required to pay his or her other creditors after the expiration of the applicable commitment period, such discrimination by its very nature could not be unfair. All that would be required of such discrimination is that it be reasonable. *In re Alicea*, 199 B.R. 862. Under this scenario, the threat of incarceration, however remote, or the nondischargeability of a debt may be factors in making a determination of a reasonable basis for discrimination. *See In re Smalberger,* 157 B.R. 472, 477 (Bankr. D. Or. 1993), *aff'd,* 170 B.R. 707 (D. Or. 1994); *In re Haag,* 3 B.R. 649, 651 (Bankr. D. Or. 1980). Simply put, as a result of his or her compliance with Section 1325(b)(1)(B), a debtor can discriminate after the expiration of the applicable commitment period as long as there is a reasonable basis to do so.[10]

## V.    CONCLUSION

Based on the foregoing, confirmation of the Debtors' plans is denied without prejudice. Counsel for the Trustee is directed to submit a form of order consistent with the court's findings.

---

[9] The court is cognizant that there may be times when a debtor's projected disposable income to be received in the applicable commitment period will be exhausted by those claims entitled to priority under 11 U.S.C. § 1322(a)(2) and § 1328(b) and, as a consequence, general unsecured claims may not get paid at all. But this is of no moment because Section 1325(b)(1)(B) only concerns payment of a debtor's projected disposable income during the applicable commitment period for payment to creditors. Section 1325(b)(1)(B) does not establish a priority scheme of those payments.

[10] At the hearing, the Debtors' counsel expressed concern over reinstatement of licenses. Since a debtor is entitled to discriminate under this scenario, counsel will still be able to produce a confirmed plan to a municipality in order to have a license reinstated.